**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

UNITED STATES OF AMERICA

v.                                                         CASE NO. 2:10-CR-95-FtM-36SPC

GERREN JON DAVID CARTER
_____/

**ORDER**

**THIS CAUSE** came on for consideration of the Report and Recommendation filed by United States Magistrate Judge Sheri Chappell on March 10, 2011 (Dkt. 43). Following a hearing held on February 9, 2011, the Magistrate Judge recommends that the Court deny Defendant's Motion to Suppress (Dkt. 22). Defendant filed objections to the Report and Recommendation on March 24, 2011 (Dkt. 49).

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); *see Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990)(citation omitted). The district judge reviews legal conclusions *de novo*, even in the absence of an objection. *See Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), *aff'd*, 28 F.3d 116 (11th Cir. 1994).

After carefully considering Defendant's Motion to Suppress, the Government's Response in Opposition (Dkt. 24), the Magistrate Judge's Report and Recommendation, and Defendant's objections, and undertaking a *de novo* review of the legal determinations recommended in the Report and Recommendation, the Court adopts the Report and Recommendation of the Magistrate Judge. Defendant makes two objections to the Report and Recommendation. First, Defendant objects to the determination that the April 10, 2010 traffic stop was lawful. Second, Defendant objects to the determination that he waived his *Miranda* rights.

I.   **RELEVANT BACKGROUND**[1]

On April 10, 2010 at approximately 11:00 a.m., Officer Erin Campbell observed Defendant at a gas station (Dkt. 40, pp. 78, 81). When Defendant got inside his vehicle and drove away from the gas station, Officer Campbell began to follow him. *Id*. at p. 100. As Officer Campbell approached the vehicle from behind, Defendant came to a stop sign at Morado and Royal Palm Street. *Id*. at 82. Officer Campbell was approximately twenty (20) yards from the vehicle. *Id*. While Defendant was at the stop sign, Officer Campbell observed only one operative brake light. *Id*. at 83. Officer Campbell then turned on his emergency lights to conduct a traffic stop.[2]

Defendant made a left turn at the stop sign (Dkt. 40, Government's Ex. 1, Defendant's Ex. A). There is at least one brake light that is not operating after Defendant turns. It is unclear based

---

[1] The Magistrate Judge's Report provides a more complete summary of the evidence and testimony presented during the hearing on the motion to suppress. In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo*. *Garvey v. Vaughn*, 993 F.2d 776, 779 n. 9 (11th Cir. 1993). As such, the Court only reiterates the background relevant to the issue presented in this Order.

[2] The video recording goes back approximately fifteen (15) to twenty (20) seconds from the time an officer turns on his emergency lights (Dkt. 40, pp. 82, 98).

on the Government's exhibit if the top, middle brake light is illuminated (Dkt. 40, Ex. 1). Defendant's exhibit shows that the top, middle brake light is dimly illuminated (Dkt. 40, Ex. A). After turning left, Defendant immediately pulled into a parking space, got out of the car, and ran (Dkt. 40, p. 84). This traffic stop led to Defendant's subsequent arrest.

Shortly after Defendant was detained, Detective Darrell Sizemore interviewed him. *Id*. at p. 53. During the interview, Defendant appeared to be pleasant and calm. *Id*. at p. 57. Defendant also did not appear to be intoxicated, although he drank alcohol earlier in the day. *Id*. at pp. 57-58, 71-72. Detective Sizemore did not explicitly ask Defendant if he wished to waive his *Miranda* rights. *Id*. at p. 64. However, when asked if he understood his *Miranda* rights, Detective Sizemore stated that Defendant said "right." *Id*. at pp. 64-65, 76. Additionally, Detective Sizemore learned that Defendant completed twelve (12) years of school but received a certificate instead of diploma because he failed a reading test. *Id*. at pp. 65-66.

## II.   STANDARD

### A.   Reasonable Suspicion

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment.'" *U.S. v. Baptiste*, 388 Fed. Appx. 876, 880 (11th Cir. July 21, 2010)(citing *U.S. v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001)). A police officer may stop a vehicle to investigate if he has reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 19-21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *U.S. v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). "To justify such a detention, the police must 'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Baptiste*, 388 Fed. Appx. at 880 (quoting *Terry*, 392 U.S. at 21). A reasonable suspicion is determined from the totality of the circumstances and from

the knowledge of the officers involved in the stop. *U.S. v. Williams*, 876 F.2d 1521, 1524 (11th Cir. 1989). The reasonable suspicion standard is less demanding than proof of wrongdoing by a preponderance of the evidence and less than probable cause. *Id*. However, the standard requires that the officer "articulate facts which provide some minimal, objective justification for the stop." *Id*. An officer may stop a vehicle upon observing probable cause for a traffic violation even if his real purpose is to investigate some other crime. *Baptiste*, 388 Fed. Appx. at 880 (citing *Whren v. U.S.*, 517 U.S. 806, 813, 819, 116 S. Ct. 1769, 135 L. Ed. 2d. 90 (1996); *U.S. v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999)).

      **B.**    *Miranda* **Rights**

"A suspect in custody must be advised as follows: 'He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires.'" *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010)(quoting *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). Law enforcement officers are not required to terminate an interrogation unless the invocation of a *Miranda* right is unambiguous. *Id*. ("Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his "'right to cut off questioning.'")(citations omitted). *Miranda* rights may be implicitly waived through the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver. *Id*. at 2261 (citing *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979)).

"If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of *Miranda* rights." *Id*. "The prosecution must make the additional showing that the accused understood these rights." *Id*. "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id*.

### III.   ANALYSIS

#### A.   Reasonable Suspicion

Defendant objects to the Magistrate's determination that the traffic stop was lawful. Defendant argues that the video recording shows that there were two operating brake lights when Officer Campbell made the traffic stop (Dkt. 49, pp. 4-7). Based on this showing, Defendant contends that Officer Campbell did not have probable cause for a traffic violation.

Based on a review of the transcript from the hearing on the Motion to Suppress and the video recordings submitted by the Government and Defendant, the Court finds that the traffic stop was lawful. Officer Campbell had probable cause of a traffic violation at the time he stopped Defendant. When Office Campbell turned on his emergency lights at the stop sign, the video recordings do not show any brake lights illuminated. However, Officer Campbell testified that he saw one operating brake light. As such, Officer Campbell had probable cause of a traffic violation because he is able to articulate facts that provide some minimal, objective justification for the stop.

Defendant emphasizes that after Office Campbell turned on his emergency lights and Defendant made the left turn at the stop light, it is clear that there are two operative brake lights illuminated (Dkt. 49, p. 5). Florida Statute § 316.222(1) requires that a motor vehicle be equipped

with two or more stop lamps. *See State v. Burger*, 921 So.2d 847, 848 (Fla. 2d DCA 2006)(citing Fla. Stat. § 316.222(1)). The two operative brake lights on the rear of a vehicle "shall display a red or amber light, visible from a distance of not less than 300 feet to the rear in normal sunlight . . . ." Fla. Stat. § 316.234(1). Based on the video recording, as Office Campbell approached Defendant's vehicle at the stop sign, only one brake light was seen at the distance of approximately twenty (20) yards. Upon turning left, Defendant's two operating brake lights were only visible on the video recording, taken at 11:00 a.m. in normal sunlight, at a distance of less than 300 feet away. There is no indication that Defendant's brake lights were illuminated *and visible* at a distance of not less than 300 feet from the rear of the vehicle. As such, the Court finds that the traffic stop was lawful, and all physical evidence obtained as a result of the traffic stop was properly seized.

      B.     *Miranda* **Rights**

Defendant also objects to the Magistrate's understanding of *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260, 176 L. Ed. 2d 1098 (2010) (Dkt. 49, p. 8).

The Court finds that the Magistrate's determination is consistent with the holding in *Thompkins*. The Magistrate found that: 1) Detective Sizemore believed that Defendant affirmed by saying "right" and nodding his head that he understood his *Miranda* rights; 2) Defendant continued talking to Detective Sizemore after being read his *Miranda* rights; 3) Defendant was not intoxicated during the interview; 4) Defendant was familiar with the system and *Miranda* rights based on previous arrests; and 5) Defendant was pleasant and cooperative during the interview. (Dkt. 43, pp. 14-16). The Government showed that the *Miranda* warnings were given to Defendant and that Defendant understood those rights. Where the Government shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an

implied waiver of the right to remain silent. Therefore, Defendant's uncoerced statements established an implied waiver of Defendant's *Miranda* rights.

**ACCORDINGLY**, it is now **ORDERED** and **ADJUDGED** as follows:

1. The Report and Recommendation of the Magistrate Judge (Dkt. 90) is **ADOPTED, CONFIRMED** and **APPROVED** in all respects and is made a part of this order for all purposes, including appellate review.

2. Defendant's Motion to Suppress Statements (Dkt. 22) is **DENIED**.

**DONE AND ORDERED** at Ft. Myers, Florida, on April 7, 2011.

Charlene Edwards Honeywell
United States District Judge

<u>**COPIES TO**</u>:
Magistrate Judge Sheri Polster Chappell
Counsel of Record